# EXHIBIT "7"

[Civ. No. 14042. Third Dist. Feb. 27, 1975.]

WAL-NOON CORPORATION et al., Plaintiffs and Appellants, v.
NORMAN T. HILL et al., Defendants and Appellants.

## SUMMARY

In an action by lessees to recover under provisions of a lease from the
lessors the cost of installing new roofing on the leased premises, the trial
court found that the lease required lessors to repair the roof except for
repairs necessitated by the lessee's negligent or improper use, but that
lessors had neither notice from lessees nor knowledge of the need for
repairs prior to completion of the work. The trial court concluded that
the lessees thus breached the lease by failing to give notice, and were not
entitled to recover under the lease. However, the court held lessees were
entitled to restitution because lessors had been unjustly enriched, and
entered judgment for lessees for two-thirds of the cost of the roofing.
(Superior Court of Sacramento County, No. 218667, Irving H. Perluss,
Judge.)

The Court of Appeal reversed and remanded with directions to enter
judgment for the lessors. The court held that notice by the lessees was an
indispensable condition precedent to lessors' duty to perform under the
covenant to repair, and since no notice was given prior to completion of
the repairs, the trial court was correct in denying recovery to lessees
under the lease. However, the court also held that the lessees could not
recover under equitable principles, since there cannot be a valid, express
contract and an implied contract, each embracing the same subject
matter existing at the same time, and that the extension of equitable
relief to lessees would effectively deprive lessors of part of the bargained-
for consideration in the lease, that is, the right of control over repairs for
which lessors are held responsible in the lease. (Opinion by Puglia, P. J.,
with Regan and Paras, JJ., concurring.)

[Feb. 1975]

**HEADNOTES**

Classified to California Digest of Official Reports, 3d Series

**(1a, 1b) Landlord and Tenant § 71—Repairs, Alterations and Improve-
ments—Compensation for Improvements.**—In an action by lessees
to recover from the lessors the cost of installing new roofing on the
leased premises, the trial court correctly denied recovery to the
lessees under the lease, where, while the lease provided that the
lessors were to make repairs to the roof at their own cost and
expense, the lessees installed the roofing on their own initiative and
at their own expense without giving any notice thereof to the lessors
prior to completion of the repairs. Notice was an indispensable
condition precedent to the lessors' duty to perform under the
covenant to repair even though the lease contained no express
provision that the lessor be given notice to repair, since it is
necessarily implied in the covenant to repair at lessor's "own cost
and expense" that the right to determine and control the nature,
quality, course and manner, as well as the cost of repairs, is a
concomitant of the burden to do so, and the unilateral action of
lessees deprived lessors of that important right.

**(2)   Contracts § 23—Construction and Interpretation.**—That which is
necessarily implied in the language of a contract is as much a part
of it as that which is expressed; unexpressed provisions of a contract
may be inferred from the writing.

**(3)   Landlord and Tenant § 71—Compensation for Improvements.**—
There cannot be a valid, express contract and an implied contract,
each embracing the same subject matter, existing at the same time.
Thus, in an action under a lease by lessees to recover
from the lessors the cost of installing new roofing on the leased
premises, in which the court correctly denied recovery to the lessees
under the lease since the lessees had not given the requisite notice
to lessors prior to completion of repairs, it was error for the court to
enter judgment for the lessees for two-thirds of the costs of the
roofing under the equitable principle of unjust enrichment. The
extension of equitable relief to lessees under these circumstances
effectively deprived lessors of part of the bargained-for considera-

[Feb. 1975]

tion in the lease, that is, the right of control over repairs for which lessees were held responsible.

[See **Cal.Jur.2d,** Landlord and Tenant, § 143; **Am.Jur.2d,** Landlord and Tenant, § 777.]

**(4)**   **Restitution and Constructive Contracts § 2—Grounds—Common Mistake.**—In a situation in which equally innocent persons laboring under a common mistake have dealt with one another, the burden of loss resulting therefrom will ordinarily be left where the parties themselves have placed it, unless equity and good conscience require restitution by defendant.

**(5)**   **Restitution and Constructive Contracts § 2—Grounds—Unilateral Mistake.**—Failure to make reasonable inquiry to ascertain or understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty, and there can be no recovery for a loss resulting from a unilateral mistake of fact occasioned by such neglect.

---

## COUNSEL

Gale & Goldstein and Stanley J. Gale for Plaintiffs and Appellants.

Thomas J. Hammer, Jr., for Defendants and Appellants.

---

## OPINION

**PUGLIA, J.**—Plaintiffs, lessees, and defendants, lessors, each appeal from a judgment in favor of plaintiffs entered in an action seeking recovery under provisions of a lease. Plaintiffs challenge the trial court's failure to award them full compensation pursuant to the lease and also to award them attorney's fees under a provision in the lease. Defendants' cross-appeal challenges the trial court's decision awarding plaintiffs any damages at all in view of the court's conclusion that plaintiffs breached the lease under which recovery was sought. In its intended decision, the trial court characterized the action as "a classic case of restitution" and entered a judgment reflecting the application of equitable principles. Both parties register disagreement with the trial court's reasoning and conclusion.

[Feb. 1975]

In August of 1957, the parties entered into a lease agreement for the construction and occupancy of a building. The major portion of the building was to be occupied and used by plaintiffs for a market and the remainder was to be sublet by plaintiffs for various satellite enterprises. Construction was completed in 1959.

In 1967 or 1968 the roof started to leak over the market portion of the building. Shortly thereafter complaints were made to plaintiffs by other tenants of similar leaky conditions. On several occasions, repairs were made to the roof at plaintiffs' expense. After approximately 12 to 15 repairs, plaintiffs were advised by roofers whom they consulted that repair was no longer practicable and that a new roof should be installed. Plaintiffs sought and obtained competitive bids for replacing the roof and awarded the job to the lowest bidders. Replacement was accomplished in two stages, the satellite portion being done by one company in September 1968 at a cost of $4,800, and the market portion by another in August 1969 at a cost of $4,000.

The lease in part provided as follows: "MAINTENANCE AND REPAIRS. The Lessors agree, at their own cost and expense, to make all repairs to the roof and exterior walls (except glazing and painting replacements and/or repairs which Lessees agree to do) of the new building, provided, however, that the Lessors shall have no obligation to make any repairs to the new building made necessary by the negligence or improper use thereof by the Lessees, their sub-lessees, agents or employees. Except as herein qualified, Lessees shall keep the leased premises in good order and condition at their own expense and surrender the same in good order and condition upon the expiration or sooner termination of this lease, reasonable wear from proper use thereof and damage from the elements excepted.

"      .    .    .    .    .    .    .    .    .    .    .

"WRITTEN COMMUNICATIONS. All notices, demands, consents and denials hereunder by either party to the other shall be in writing and shall be sufficiently given and served if either personally served, or if sent by United States registered mail, return receipt requested, postage prepaid, in a sealed envelope addressed as follows:

"If sent by mail to Lessors, the same shall be addressed to the Lessors at 4920 15th Avenue, Sacramento, California;

[Feb. 1975]

"If sent by mail to Lessees, the same shall be addressed to the Lessees at the leased premises.

"Either the Lessors or the Lessees may change such address by notice in writing to the other party of such new address as the Lessors or the Lessees may desire used for such purpose. All rent or other sums payable hereunder may be paid to Lessors at the above listed address for notices.

"⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅  ⋅

"INTERPRETATION. The various headings and numbers herein and the groupings of the provisions of this lease into separate articles and paragraphs shall not be construed to limit or restrict either the meaning or application of any provision hereof, and are for the purpose of convenience only."

Prior to the repairs to and later replacement of the roof, plaintiffs did not review the lease to determine upon which party the obligation for such work was placed. However, in 1971, the plaintiffs finally became aware of the lease provision which allocated the responsibility for such repair and replacement to defendant lessors. Thereafter plaintiffs requested that defendants reimburse them for the sums expended to replace the roof. Defendants refused and this action was thereafter instituted.

The complaint filed by plaintiffs was phrased purely in terms of contract, as was defendants' answer. The action proceeded to trial on that theory, plaintiffs seeking to establish the provisions of the lease and the circumstances surrounding repair and replacement of the roof. Defendants sought to show that they were prejudiced by plaintiffs' failure to notify them of the defective condition of the roof at a time when they could exercise their contractual right to control repair or replacement.

The contractor who replaced the roof over the market testified that he was asked by plaintiffs to estimate cost of replacement but did not recall if he was asked to estimate cost of repair. He also stated that some of the roof damage possibly could have been caused in servicing the air conditioning equipment placed on the roof by plaintiffs and further, that some of the roof damage was attributable to water overflow from this equipment. The roof that he installed had a 15-year life expectancy. He testified that for an additional $1,200 to $1,300 a roof with a 20-year life expectancy could have been installed. He also testified that roofs can

always be repaired, although in some cases it may not be economically feasible to do so.

The contractor who re-roofed the satellite area testified that plaintiffs did not ask him the cost of repair but only for an estimate of replacement cost. He also was of the opinion that some of the damage to the roof could have been caused in servicing the air conditioning equipment. The roof which he installed had a two-year warranty but this could have been extended to twenty years by the purchase at the time of installation of a bond for approximately $600.

Defendant Hill testified that he had no knowledge of leaks in the roof, the need for repairs, or that the roof had been replaced until he was so advised by plaintiffs in February 1971. He was of the opinion that the original roof on the building had a 20-year life expectancy, and that recourse might have been available against the installing contractor had he been timely notified. He testified that as a contractor himself, he might have been able to obtain more advantageous terms for required repairs or replacement. Hill further testified that an examination of the damage to the old roof might have disclosed the cause thereof and that if caused by plaintiffs' activities relating to the air conditioning system, he would not be liable under the lease for repairs or replacement.

The trial court prepared its own findings of fact and conclusions of law. It found that the lease required defendants to repair the roof except for repairs necessitated by plaintiffs' negligent or improper use; that repairs became necessary for which plaintiffs spent $8,941; and that defendants had neither notice from plaintiffs nor knowledge of the need for repairs prior to completion of the work.

From those facts the court concluded that plaintiffs breached the contract by failing to give notice; that they were, however, entitled to restitution because defendants had been unjustly enriched; that an offset equal to one-third of the replacement cost was equitable; and that plaintiffs were therefore entitled to judgment against defendants for $5,867 plus legal interest from the date demand was made for reimbursement under the lease. The court further concluded that plaintiffs were not entitled to attorney's fees "Inasmuch as this action was not predicated on the lease, and plaintiffs in any event had breached the lease, . . ."

Plaintiffs take the position on appeal that the judgment as rendered by the trial court "is outside the scope of the pleadings and the theory of the

case as presented at the trial" and that the "case should stand or fall upon the contractual provisions of the lease." **(1a)** Plaintiffs then argue that the trial court erred in finding them in breach of the lease for failure to give notice and in denying them full recovery thereunder. The argument is made that the lease provision governing the form and manner of giving notice cannot be expanded into a condition precedent that notice to repair in fact be given.

The plaintiffs are, of course, correct that the lease does not contain an express provision that defendants be given notice to repair. However, it is impossible to conceive of how the intentions of the parties as expressed in the covenant to repair could be implemented if notice were not required. Defendants' duty to repair was not unconditional. It did not extend to repairs made necessary by the negligence or improper use of the premises by the lessees, their agents or employees. Such repairs were by necessary implication the responsibility of lessees who were by the lease obligated to keep the premises "in good order and condition at their own expense . . . ." Clearly the parties did not intend that when repairs became necessary the lessees could unilaterally and conclusively determine the responsibility therefor and allocate the burden thereof as between lessor and lessee. If the interpretation of the lease urged by plaintiffs were accepted, however, it would permit plaintiffs to alter conditions without the lessors' knowledge and to their disadvantage, at the same time eliminating any real opportunity for the lessors to dispute their liability under the lease.

As an actual consequence of plaintiffs' unilateral action herein, defendants were irreparably handicapped in presenting a defense. Confronted with a *fait accompli,* defendants, in an effort to prove plaintiffs' responsibility for the roof damage or alternatively, to contest the necessity for repairs of the extent accomplished, were necessarily consigned to reliance upon evidence of a conjectural quality.

Moreover, it is necessarily implied in the covenant to repair at lessors' "own cost and expense" that the right to determine and control the nature, quality, course and manner, as well as the cost of repairs, is a concomitant of the burden so to do. The unilateral action of plaintiffs herein deprived defendants of this important right.

**(2)** That which is necessarily implied in the language of a contract is as much a part of it as that which is expressed. (*Bliss* v. *California Cooperative Producers* (1947) 30 Cal.2d 240, 249 [181 P.2d 369, 170

A.L.R. 1009].) Unexpressed provisions of a contract may be inferred from the writing. (*Cal. Lettuce Growers* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 482 [289 P.2d 785, 49 A.L.R.2d 496]; *Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 846 [48 Cal.Rptr. 240].)   **(1b)**   In the case at bench, notice as a condition precedent to the lessors' obligation to repair is not only clearly apparent from the terms of the written lease, it is indispensable to effectuate the intentions of the parties. (See *Addiego* v. *Hill, supra,* 238 Cal.App.2d at p. 847.) It has been held that unless explicitly excluded therein, performance under an express covenant to repair is conditional upon notice from the tenant. (*Sieber* v. *Blanc* (1888) 76 Cal. 173, 174 [18 P. 260]; *McNally* v. *Ward* (1961) 192 Cal.App.2d 871, 884 [14 Cal.Rptr. 260].) Accordingly, we hold that notice is an indispensable condition precedent to defendants' duty to perform under the covenant to repair.

In the sense that the implied condition precedent of notice to repair does not in itself constitute a promise or covenant, plaintiffs are correct that the trial court erred in concluding that they breached the lease. (See 3A Corbin on Contracts (1960) § 634, p. 33.) However, the "error" is one of semantics, not substance. It is a minor departure from strict legal parlance and avails plaintiffs nothing, because their recovery upon the lease-contract is dependent upon alleging and proving performance of all conditions precedent to defendants' duty to repair. (*Sosin* v. *Richardson* (1962) 210 Cal.App.2d 258, 264 [26 Cal.Rptr. 610]; Civ. Code, § 1439.) It is conceded by plaintiffs, and the trial court so found, that no notice was given defendants prior to completion of the repairs. Accordingly, the trial court was correct in denying recovery to plaintiffs under the lease.

**(3)**   On appeal, defendants join with plaintiffs in assailing the trial court's resort to equitable principles as the basis for its judgment. Plaintiffs devote a good portion of their brief to arguing the invalidity of the judgment because based on equitable rather than legal principles, yet they assert alternatively that recovery of their expenditures for the new roof should be granted on the quasi-contractual theory of money paid by mistake. Reliance upon this equitable theory, generally pled as a common count for money had and received, is inconsistent with plaintiffs' initial assertion that their rights are to be determined solely by reference to the lease.

At trial neither party sought to invoke the equitable powers of the court. Neither in the pleadings nor in the proof was there a claim that the

[Feb. 1975]

---

lease was in any way invalid, void, entered into under mistake of fact, or
otherwise unenforceable; or that any of its provisions had been waived
or abandoned; or that it had been fully executed by either of the parties.
To the contrary both parties proceeded on the theory that the lease was a
valid, subsisting, enforceable contract between them.

There cannot be a valid, express contract and an implied contract,
each embracing the same subject matter, existing at the same time. (66
Am.Jur.2d, Restitution and Implied Contracts, § 6, pp. 948-949; cf.
*Barrere* v. *Somps* (1896) 113 Cal. 97 [45 P. 177, 572].) The reason for the
rule is simply that where the parties have freely, fairly and voluntarily
bargained for certain benefits in exchange for undertaking certain
obligations, it would be inequitable to imply a different liability and to
withdraw from one party benefits for which he has bargained and to
which he is entitled. The resolution of the instant controversy by the
extension of equitable relief to plaintiffs would effectively deprive
defendants of part of the bargained-for consideration in the lease, i.e.,
the right of control over repairs for which they are therein held
responsible. " 'While a court of equity may exercise broad powers in
applying equitable remedies, it may not create new substantive rights
under the guise of doing equity.' " (*Lande* v. *Jurisich* (1943) 59
Cal.App.2d 613, 618 [139 P.2d 657]; see also *Heath* v. *Kettenhofen* (1965)
236 Cal.App.2d 197, 207-208 [45 Cal.Rptr. 778].)

The mistake-of-fact cases cited by plaintiffs involve situations where
money was paid by plaintiff to defendant under a mistaken belief that
such payment was required. Those cases hold that upon discovery of
such mistaken payment, defendant must make a refund unless, by reason
of the payment to him, he has changed his position so that to require
repayment would be unjust. (See, e.g., *National Bank of California* v.
*Miner* (1914) 167 Cal. 532, 537 [140 P. 27]; *American Oil Service* v. *Hope
Oil Co.* (1965) 233 Cal.App.2d 822, 830 [44 Cal.Rptr. 60].)

In the case at bar, however, money was not paid by plaintiffs to
defendants but rather by plaintiffs to third parties who, at plaintiffs'
instance, performed labor upon and made improvements to defendants'
property. The rule applicable to cases of money mistakenly paid by
plaintiff to defendant is therefore inapposite.

In the comment to section 40 of the Restatement of Restitution, it is
said, "Restitution for services rendered is not permitted as freely as for
money paid or things given, . . . Frequently it would be unfair to the
person benefited by services to require payment since, although bene-

. [Feb. 1975]

fited, he reasonably may be unwilling to pay the price; he does not have the opportunity of return, which usually exists in the case of things received, nor the definite and certain pecuniary advantage which ensues where money has been paid."[1] And section 41 of the Restatement of Restitution provides that: "A person who has rendered services to another or services which have inured to the other's benefit, is not entitled to compensation therefor if the services were rendered:

"(a) without the other's knowledge or reason to know of them, solely because of a mistaken belief

"     .        .        .        .        .        .        .        .

"(ii) that the persons rendering the services . . . had a duty to the other . . . so to perform; . . ." In the comment to section 41, it is acknowledged that although the rule "is harsh to a person who performs the service," that result follows "from the fact that many times it would be still more harsh to require a recipient to pay for services which he did not want or for which he could not afford to pay although he may have been glad to have them."

(4)    We are not dealing here with a situation where equally innocent persons, laboring under a common mistake, have dealt with one another. In such cases the burden of loss resulting therefrom ordinarily will be left where the parties themselves have placed it unless equity and good conscience require restitution by defendant. (See, e.g., *Frontier Refining Co.* v. *Home Bank* (1969) 272 Cal.App.2d 630, 636 [77 Cal.Rptr.

---

[1] The evidence in this case does little to illuminate the extent of advantage, pecuniary or otherwise, accruing to defendants from the replacement of the roof. The correct measure of restitution for improvements to the land is the benefit to the owner, i.e., the enhancement of the market value of the land by reason of the improvement and not the cost of the improvement itself. (41 Am.Jur.2d, Improvements, § 29, pp. 499-500.) Plaintiffs proved the cost to them of replacement of the roof. While the cost of improvements is some evidence of value (*Shermaster* v. *California Bldg. etc. Co.* (1919) 40 Cal.App. 661, 667 [181 P. 409]), it is not in all cases determinative of value. (See 41 Am.Jur.2d, Improvements, § 30, pp. 500-501.) Defendants attempted to show damage through lack of notice and the consequent denial to them of the right to control the conduct of the work. Defendants' evidence was of necessity conjectural and thus not susceptible of equation with a fixed monetary value. Nonetheless the court arrived at a value apparently representing the detriment suffered by defendants by reason of lack of notice. The amount of detriment was fixed at one-third of the total cost to plaintiffs of replacement of the roof. Defendants were allowed that amount as a setoff against plaintiffs' recovery of the cost of replacing the roof which cost, it may be implied, the court found to be reasonable. Thus the court resorted to the measure of damages applicable to recovery under the lease rather than to restitution in a quasi-contract action. In view of the fact that the parties came prepared to and did try the case on an express contract theory, the paucity of evidence of benefit to defendants is understandable.

[Feb. 1975]

641].)  **(5)**  Rather we are here presented with a case of unilateral mistake on the part of plaintiffs. Under such circumstances there can ordinarily be no recovery where the error of the mistaken party is occasioned by the neglect of a legal duty. (Civ. Code, § 1577.) Failure to make reasonable inquiry to ascertain or effort to understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty such as will preclude recovery for unilateral mistake of fact. (*Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 765-766 [75 Cal.Rptr. 533]; see also *Goodrich* v. *Lathrop* (1892) 94 Cal. 56, 58-59 [29 P. 329].)

The parties have had their day in court on the contract and the findings of fact provide adequate support for a judgment for defendants on the contract action. No retrial of the matter is necessary and no new findings need be entered. The conclusions of law, however, must be modified by striking conclusions numbered "2," "3" and "4"[2] and entering conclusions appropriate to a judgment for defendants on the contract.

Defendants on appeal request an award of attorney's fees, as prevailing party in the action on the contract. With respect to attorney's fees, the lease provides: "If either party shall bring an action against the other party to enforce any of the terms of this lease, the prevailing party shall be entitled to attorneys' fees and costs, all as adjudged reasonable by the court." The defendants are entitled to recover reasonable attorney's fees under this provision.

The judgment is reversed and the cause remanded to the trial court with directions to modify the conclusions of law as herein directed and to enter judgment for defendants accordingly together with an award of attorney's fees to defendants in a reasonable amount as determined by the trial court.

Regan, J., and Paras, J., concurred.

---

[2]As entered by the court, the conclusions state:
"1. Plaintiffs have breached their contract by failing to give notice.
"2. Plaintiffs, however, are entitled to restitution because defendants have been unjustly enriched.
"3. An offset of one-third is equitable and plaintiffs will have judgment against defendants in the amount of $5,867, together with interest at the rate of seven percent from February 9, 1971, together with costs of suit.
"4. Inasmuch as this action was not predicated on the lease, and plaintiffs in any event had breached the lease, attorney's fees will not be allowed (See as to requirements of notice *Sieber* v. *Blanc* (1888) 76 Cal. 173, 174; *McNally* v. *Ward* (1961) 192 Cal.App.2d 871, 884)."

[Feb. 1975]

# EXHIBIT "8"

FINANCE CODE

CHAPTER 302. INTEREST RATES

SUBCHAPTER A. USURIOUS INTEREST

§ 302.001. CONTRACTING FOR, CHARGING, OR RECEIVING INTEREST OR TIME PRICE DIFFERENTIAL; USURIOUS INTEREST. (a) A creditor may contract for, charge, and receive from an obligor interest or time price differential.

(b) The maximum rate or amount of interest is 10 percent a year except as otherwise provided by law. A greater rate of interest than 10 percent a year is usurious unless otherwise provided by law. All contracts for usurious interest are contrary to public policy and subject to the appropriate penalty prescribed by Chapter 305.

(c) To determine the interest rate of a loan under this subtitle, all interest at any time contracted for shall be aggregated and amortized using the actuarial method during the stated term of the loan.

(d) In addition to interest authorized by Subsection (b), a loan providing for a rate of interest that is 10 percent a year or less may provide for a delinquency charge on the amount of any payment in default for a period of not less than 10 days in an amount not to exceed the greater of five percent of the amount of the payment or $7.50. The charging of the delinquency charge does not make the loan subject to Chapter 342 or any other provision of Subtitle B.

Amended by Acts 1999, 76th Leg., ch. 62, § 7.18(a), eff. Sept. 1, 1999; Acts 2001, 77th Leg., ch. 916, § 8, eff. Sept. 1, 2001.

# EXHIBIT "9"

# California Practice Guide

## ( FEDERAL )
# CIVIL PROCEDURE BEFORE TRIAL

Chapters 8-11

### William W Schwarzer
Senior United States District Judge
Northern District of California
Former Director, Federal Judicial Center

### A. Wallace Tashima
Senior United States Circuit Judge
U.S. Court of Appeals, Ninth Circuit

### James M. Wagstaffe
Kerr & Wagstaffe
San Francisco, California

## CONTRIBUTING EDITORS

**Hon. Gerald E. Rosen**
U.S. District Judge,
Eastern District of Michigan

**Hon. Roslyn O. Silver**
U.S. District Judge,
District of Arizona

**Hon. Andrew J. Wistrich**
U.S. Magistrate Judge, Central District of California

**Atty. Steven J. Adamski**
San Luis Obispo, California

**Atty. Ivo Labar**
San Francisco, California

## 2007

CONTINUING LEGAL EDUCATION  PROGRAMS AND PUBLICATIONS

# THE RUTTER GROUP™
A DIVISION OF THOMSON WEST

[10:347 — 10:351]

(b) [10:347]  **Representative's own interest:**  Adequacy of representation tends to be assured if the representative's individual interests are the same or similar to the other class members. (There is thus an overlap with the "typicality" requirement; *see* ¶*10:285.*) [*General Tel. Co. of Southwest v. Falcon* (1982) 457 US 147, 157, 102 S.Ct. 2364, 2370]

   1) [10:348]  **Representative must be member of class:**  First of all, a plaintiff seeking to maintain a class action must in fact be a member of the class he or she claims to represent. [*General Tel. Co. of Southwest v. Falcon*, supra, 457 US at 156, 102 S.Ct. at 2370]

   In addition, plaintiffs must allege and show "*they personally have been injured*, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." [*Lierboe v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 350 F3d 1018, 1022 (emphasis added)—without a valid claim, plaintiffs lack standing and class action must be dismissed]

   2) [10:349]  **Size of interest:**  The class representative or representatives should have enough at stake to ensure vigorous prosecution or defense of the action. [*Stewart v. Winter* (5th Cir. 1982) 669 F2d 328, 335]

   3) [10:350]  **Association as plaintiff:**  An unincorporated association or organization (e.g., labor union) may have "standing" to sue on behalf of its members even in the absence of any injury to itself. But it cannot be an adequate representative of the class unless it meets the requirements of FRCP 23(a)(4); i.e., the *association itself* must have suffered injury as well as its members. [See *Black Grievance Committee v. Philadelphia Elec. Co.* (ED PA 1978) 79 FRD 98, 111, fn. 13; *Bano v. Union Carbide Corp.* (2nd Cir. 2004) 361 F3d 696, 714—organization could not maintain action as class representative for bodily harm and property damage suffered by its members]

   4) [10:351]  **Members of unincorporated associations:**  Members of unincorporated associations may serve as class representatives if it is shown that they will adequately represent the

# EXHIBIT "10"

# SUMMARY OF CALIFORNIA LAW

## Tenth Edition

### by B. E. WITKIN

*and members of the*

### WITKIN LEGAL INSTITUTE

Volume 1



WITKIN
LEGAL INSTITUTE
*2005*

(13) *Health care service plans.* (See Health & Saf.C. 1340 et seq. [extended regulation and enforcement by Commissioner of Corporations]; *Schmidt v. Foundation Health* (1995) 35 C.A.4th 1702, 1714, 42 C.R.2d 172 [Health & Saf.C. 1340 et seq. and related administrative regulations prohibit broker of health care service plans from offering commission rebates to clients]; *California Med. Assn. v. Aetna U.S. Healthcare of Calif.* (2001) 94 C.A.4th 151, 158, 114 C.R.2d 109 [nonwaiver clause of Health & Saf.C. 1371 did not preclude health plan from delegating to intermediaries duty to make payments to doctors providing services to plan's enrollees; nonwaiver clause simply meant that time limits had to be observed even when payment obligations have been delegated].)

(14) *Invention development services.* (See B. & P.C. 22370 et seq., [requiring various provisions including notice of right to cancel, and statement that customer's potential patent rights may be adversely affected by any attempt to commercialize idea or invention prior to filing patent application]; 7 Pacific L. J. 307.)

(15) *Earthquake insurance.* (See Ins.C. 10081 et seq. [requiring that, before issuance of any residential property insurance policy, insured be offered opportunity to obtain earthquake insurance].)

(16) *Spanish translation of commercial contract.* (See supra, §124.)

## XX.  QUASI-CONTRACTS AND RESTITUTION

### A.  In General.

#### 1.  [§1013]  Nature of Restitution.

The right to restitution or quasi-contractual recovery is based upon *unjust enrichment.* Where a person obtains a *benefit* that he or she may not *justly retain,* the person is unjustly enriched. The quasi-contract, or contract "implied in law," is an *obligation* (not a true contract; see supra, §103) created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by return of the thing or its equivalent in money. (See *Philpott v. Superior Court* (1934) 1 C.2d 512, 517, 36 P.2d 635; *McCall v. Superior Court* (1934) 1 C.2d 527, 531, 36 P.2d 642; *Ghirardo v. Antonioli* (1996) 14 C.4th 39, 51, 57 C.R.2d 687, 924 P.2d 996, 4 *Summary* (10th), *Security Transactions in Real Property,* §215; *Petersen v. Lyders* (1934) 139 C.A. 303, 305, 33 P.2d 1030; *Branche v. Hetzel* (1966) 241 C.A.2d 801, 807, 51 C.R. 188, quoting the text; *Kossian v. American Nat. Ins. Co.* (1967) 254 C.A.2d 647, 651, 62 C.R. 225, infra, §1016; *First Nationwide Savings v.*

*Perry* (1992) 11 C.A.4th 1657, 1662, 15 C.R.2d 173, infra, §1023; *Maglica v. Maglica* (1998) 66 C.A.4th 442, 449, 78 C.R.2d 101, quoting the text; *Lectrodryer v. SeoulBank* (2000) 77 C.A.4th 723, 726, 91 C.R.2d 881 [bank was unjustly enriched when it refused to honor prepaid letter of credit and retained funds after allowing letter to expire]; *California Med. Assn. v. Aetna U.S. Healthcare of Calif.* (2001) 94 C.A.4th 151, 170, 114 C.R.2d 109, citing the text [where health care plan delegated payment obligation to intermediaries who were then required to reimburse doctors who had furnished services to plan's enrollees, plan was not unjustly enriched even though it would benefit from intermediaries' actions]; *Desert Healthcare Dist. v. PacifiCare FHP* (2001) 94 C.A.4th 781, 786, 114 C.R.2d 623 [same]; Rest., Restitution §1; Rest.2d, Contracts §4, Comment b; 1 Corbin (Rev. ed.), §1.20.; 1 Williston 4th, §1:6; 83 Cal. L. Rev. 1191 [liability based on unjust enrichment]; 19 Hastings L. J. 991 [symposium on restitution, with extensive bibliography]; 36 Loyola L.A. L. Rev. 777 [symposium on restitution]; 66 Am.Jur.2d (2001 ed.), Restitution and Implied Contracts §1 et seq.; Cal. Civil Practice, 3 Business Litigation, §34:1 et seq.)

However, "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." (Rest., Restitution §1, Comment c; see *Marina Tenants Assn. v. Deauville Marina Dev. Co.* (1986) 181 C.A.3d 122, 134, 226 C.R. 321.)

Restitution may also be awarded in contract actions, where it often follows rescission (which typically applies only in contract actions). However, restitution is also available as a remedy to redress statutory violations. And in a statutory action, rescission is not a prerequisite to granting restitution. (*People v. Beaumont Inv. Ltd.* (2003) 111 C.A.4th 102, 132, 3 C.R.3d 429 [in unfair competition law action involving leases that violated particular ordinance, it was not necessary to rescind leases before ordering restitution for unfair competition]; on rescission, see supra, §930 et seq.)

The cause of action, just as one based on true contract, is *assignable* and provable in bankruptcy. (Rest., Restitution §§5, 149.)

*West's Key Number Digest,* Implied and Constructive Contracts ⬗4

## 2. [§1014] Practical Distinctions.

The distinction between rights of action based upon contract and quasi-contract may be of importance in the determination of a number of substantive and procedural rights and defenses:

(1) The *statute of frauds* applies to true contracts only. (*Mayborne v. Citizens Trust & Savings Bank* (1920) 46 C.A. 178, 190, 188 P. 1034;