Harris I. Steinberg (State Bar No. 89288)
Craig A. Miller (State Bar No. 116030)
LEVINE, STEINBERG, MILLER & HUVER
550 West C Street, Suite 1810
San Diego, California 92101-8596
(619) 231-9449

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16062 SOUTHWEST FREEWAY, LLC ) and GARY L. GREENBERG, on Behalf ) of All Others Similarly Situated, and on ) Behalf of the Class, )<br><br>Plaintiffs, )<br>)<br>v. )<br>)<br>PRINCIPAL COMMERCIAL FUNDING, ) LLC., and DOES 1 through 10, ) inclusive, )<br>)<br>Defendants. )<br>_____ ) | CASE NO. 07 CV 1998 DMS (AJB)<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS<br><br>Date:      January 11, 2008<br>Time:      1:30 p.m.<br>Judge:     Dana M. Sabraw<br>Courtroom: 10 |

Plaintiffs, 16062 SOUTHWEST FREEWAY, LLC and GARY L. GREENBERG, respectfully submit the following Memorandum of Points and Authorities in Opposition to PRINCIPAL COMMERCIAL FUNDING's Motion to Dismiss.

## I
## INTRODUCTION

Defendant's motion to dismiss depends for its success on a substantial distortion of the allegations in the complaint. Plaintiffs do not, as defendant repeatedly asserts, contend that defendant failed to disclose its *method* of calculating interest. A simple review of the complaint establishes this point. Thus, the argument that the complaint must be dismissed because defendant actually disclosed to plaintiffs the *method* by which it calculated interest is a

cipher, advanced only to distract this court from the actual issue raised by this lawsuit.[1]

The actual issue raised by plaintiffs in their complaint is straightforward. The defendant does not disclose the *correct* interest rate to its borrowers. Instead, defendant uses a disclosed method of interest calculation that charges interest over the course of a calendar year that is higher than the "per annum" rates directly quoted to its borrowers in their loan documents.  For example, in this case, defendant specifically informed plaintiffs that they would be paying interest on the unpaid balance of the loan "at a rate of Six percent (6.00% per annum," but actually calculated the rate over a 360-day year.  This resulted in an undeserved windfall to defendant in the form of higher than quoted interest rate as well as a longer amortization period. (Cpt.,¶¶ 9& 10).  California courts consider this practice to be misleading and unlawful under the Unfair Competition Law ("UCL"). *See*, Chern v. Bank of America (1976) 15 Cal.3d 866, 876.  [The practice of quoting as a 'per annum' rate interest that is actually computed on the basis of a 360-day year is likely to mislead and deceive a bank's potential borrowers and constitutes false and misleading advertising].

In an effort to evade liability to at least hundreds of Californian citizens under California's Unfair Competition Law, defendant further claims that plaintiffs' claims are governed by Texas law.  In fact, however, the state of California has a fundamental policy to ensure that its citizens have the right to pursue class action remedies under its Unfair Competition Law and has a materially greater interest than Texas in the determination of the issues raised in the complaint. *See, e.g.*, Oestreicher v. Alienware Corp., 502 F.Supp.2d 1061 (N.D.Cal. 2007)

---

[1] The same holds true for defendant's repeated accusations that plaintiffs deceived the court by not affixing the loan documents to their complaint "in a transparent attempt to hide the obvious and indisputable disclosures regarding the interest rate calculation." The loan documents *support* plaintiffs' position.

Accordingly, California law governs this dispute.

## II
## PLAINTIFFS' COMPLAINT PLEADS CLAIMS FOR RELIEF UNDER THE UNFAIR COMPETITION LAW

Plaintiffs' complaint pleads claims for relief under section 17200 of the California Business and Professions Code (UCL) and an equitable claim for Unjust Enrichment.  Each claim is predicated on the allegations that defendant quotes a precise "per annum" interest rate to its borrowers in its loan documents while actually computing interest in such a way as to yield a higher rate of interest than that already quoted.

Paragraph 9  describes defendant's misleading business practices in the following way:

> Defendant PCF is in the business of originating, securitizing and servicing commercial real estate loans. PCF has committed acts of unfair competition, as defined by Business and Professions Code section 17200, et seq., by (1) utilizing a method of interest calculation that systematically and deliberately charges its borrowers interest over the course of a calendar year in excess of stated annual and per annum rates; and (2) misleading its borrowers by representing that its loans would fully amortize over a set period of years when, in fact, a substantial balance would still be owed after the amortized period which defendants did not disclose. More particularly, PCF computes yearly interest rates by dividing the quoted annual interest rate by 360 and multiplying the result by 365.  This practice, which is known as the "365/360 method" results in an effective interest rate that exceeds the stated per annum or annual interest rate and an amortization period that is longer than that represented by the defendant. Defendants had no reason for computing yearly interest rates by the "365/360 method" other than to maximize their profits and deceive borrowers.

Paragraph 10 alleges how defendant's misleading business practices actually harmed plaintiffs in this case:

> Plaintiffs are victims of PCF's unscrupulous business practices. On or about March 7, 2007, 16062 SOUTHWEST FREEWAY borrowed $2,7000.00 from PCF in connection with the refinance of a medical office building located at 16062 Southwest Freeway, Sugar

Land, Texas. As a condition to PCF's agreement to make the loan, on or about March 7, 2007, PCF required GREENBERG to guarantee payment and the full, faithful and timely performance of any and all liabilities and obligations of the borrower. The loan was for a 10 year term, amortized over 30 years, at a 6% annual interest rate. The secured promissory note executed by 16062 SOUTHWEST FREEWAY and guaranteed by GREENBERG also quotes an interest rate of 6% per annum. Contrary to these representations, and based on defendant's misleading practice of actually computing the interest rate on the basis of a 360 day year, defendant has charged and continues to charge an interest rate exceeding 6% per annum and, at the end of 30 years, plaintiffs' loan would not be fully amortized. Rather, plaintiffs would still owe PCF approximately $142,000.00, and the effective interest rate would be in excess of the agreed 6% interest rate.

In its motion, defendant has attached as an exhibit the Secured Promissory Note signed by 16062 SOUTHWEST FREEWAY and guaranteed by GARY GREENBERG to its Motion to Dismiss. (*See,* Defendant's Lodgment of Exhibits, Exh. 1). The language set forth in the Promissory Note absolutely coincides with and verifies the allegations set forth in plaintiffs' complaint. More particularly, the Promissory Note (1) expressly states that plaintiffs promised to repay the loan at a precise rate of interest ["[A]t a rate of Six percent (6.00%) per annum"]; and (2) includes the discrepant language that defendant will calculate the interest using the 365/360 method.

### III
### DEFENDANT'S USE OF THE 365/360 METHOD VIOLATES CALIFORNIA'S UNFAIR COMPETITION LAW

In Chern v. Bank of America (1976) 15 Cal.3d 866, a plaintiff brought a class action lawsuit alleging that the bank breached its loan contract with her and all other class members and engaged in unfair business practices by charging a higher annual interest rate than the nine percent specified in the promissory note. As in this case, the bank achieved a higher rate of interest by computing the interest using the 365/360 method. The plaintiff pointed out the discrepancy to the bank and, in response, the bank briefly explained to her its method of

1    computing interest.  The plaintiff challenged the method as being dishonest, but

2    nonetheless executed the loan documents.

3         *Despite the fact that the plaintiff had antecedent knowledge of the bank's*

4    *use of the 365/360 method before she executed the loan documents*, the

5    California Supreme Court held that the bank's practice of computing interest

6    quoted as a 'per annum' rate on the basis of a 360-day year was likely to

7    deceive the public because 'per annum' literally means 'by the year' and, as

8    commonly understood, a year has either 365 or 366 days.

9              In absence of evidence to the contrary, we must

10             assume that the public is likely to understand that a 'per

11             annum' rate is an annual rate based on a 365-day

12             calendar year. The fact that it may be customary

13             business practice within the banking community to

14             quote interest rates on the basis of a 360-day year does

15             not necessarily establish that the practice is not

16             misleading the general public with whom defendant

17             deals.

18        *Id*., at 876.[2]

19        Although the decision emanates from the California Supreme Court,

20   defendant has neither analyzed nor discussed <u>Chern</u> in its motion.  Rather, it has

21   chosen to bury in footnote 5 of its brief the sweeping, wholly inaccurate,

22   statement that, under <u>South Bay Chevrolet v. General Motors Acceptance</u>

23   <u>Corporation</u>, 72 Cal.App.4th 861, 869 (1999), "[T]he interest calculation provided

24   for in the Promissory Note is lawful under California law."  <u>South Bay Chevrolet</u>

25   makes no such holding.

26

27   _____

28   [2] *See also*, <u>Fletcher v. Security Pacific National Bank</u>, (1979) 23 Cal.3d 442.
     [Unfair trade practice established on part of defendant bank by computing so-
     called "per annum" rates on basis of 360-day year.

1    In <u>South Bay Chevrolet</u> an automobile dealership obtained short-term loans
2    (fewer than 90 days on average) from the defendant to fund purchases of
3    vehicles for resale.  The loans were not evidenced by a promissory note
4    identifying a precise 'per annum' interest rate to be charged to the borrower, but
5    rather by a Wholesale Security Agreement which did not contain specific loan
6    terms such as the amount of credit to be extended, the rate of interest, the
7    method of interest calculation, repayment provisions or the beginning or ending
8    dates of the refinancing.  The plaintiff and its finance department were, at all
9    times, aware that defendant actually calculated interest on the 365/360 method
10   on a floating basis using the prime rate.  The parties also had a decades long
11   course of dealing and repeatedly communicated with each other regarding the
12   financing.  Under these facts, the appellate court determined that the plaintiff's
13   sophistication and knowledge precluded an UCL claim against the defendant.

14    This case clearly alleges a factual circumstance distinct from that presented
15   in <u>South Bay Chevrolet</u>.  Specifically, in this case, the plaintiff executed a long-
16   term Promissory Note containing specific loan terms, including the precise "per
17   annum" interest rate to be charged. ["[A]t a rate of Six percent (6.00%) per
18   annum"].  Notwithstanding this representation, defendant calculated the interest
19   to reflect a higher rate, the actual amount of which was never disclosed to
20   plaintiff. It would have been a simple matter for defendant to raise its interest rate
21   to generate the additional income the 365/360 method produced and to
22   accurately quote that higher rate in the loan documents.  It chose not to.  No
23   logic, course of dealing or conceptual justification exists for defendant's
24   surreptitious conduct.  Clearly, defendant's goal was to lead the plaintiffs into
25   believing they would be paying interest at a rate of 6%, when they were not.
26   ///
27   ///
28   ///

### III
### TEXAS LAW CLASHES WITH THE FUNDAMENTAL PUBLIC POLICIES OF THIS STATE AND ITS APPLICATION WILL UNFAIRLY PERMIT DEFENDANT TO EVADE THE PROTECTIONS AFFORDED BY THE UCL

Plaintiff GREENBERG is a California resident who, in this action, seeks to represent "at least hundreds" of California consumers.  (Cpt.,¶¶2b, 11 & 12). GREENBERG  personally guaranteed the subject loan in California. (Cpt.,¶2d). Although incorporated in Texas, plaintiff 16062 SOUTHWEST FREEWAY maintains its principal place of business in San Diego County, California. (Cpt. ¶2a). It obtained the loan which serves as the subject matter of this lawsuit in San Diego County, California.(Cpt.¶2c).   The defendant has no particular allegiance to the State of Texas: it is a Delaware corporation with its principal place of business in Des Moines, Iowa.  (Cpt.¶5, Defendant's Lodgement, Exh. 1).

Notwithstanding these facts, and without extended discussion or analysis, defendant summarily concludes that Texas law governs this case because the loan documents state that the parties' agreements shall be governed "by the laws of the state where the Premises is located, without regard to conflict of law principles" Id[3/].  If defendant is correct, at least hundreds of citizens of the State of California who have been harmed by defendant's misleading business practices will be left without a remedy merely because the plaintiff's land happens to be in Texas.  Clearly, the mere fortuity of "where the premises is located," should not, in this case, permit defendant to engage in misleading business practices in the State of California with impunity and without regard to appropriate consequence.

///

---

[3/]The party advocating a contractual choice of law clause bears the burden of showing that the claim falls within the choice of law provision. Washington Mut. Bank, FA v. Superior Court (2001) 24 Cal.4th 906, 912. In its brief, defendant utterly fails to discuss the issue.

1    In determining the enforceability of a contractual choice-of-law provision,
2  the court must first determine (1) whether the chosen state has a substantial
3  relationship to the parties or their transaction; or (2) whether there is any other
4  reasonable basis for the parties' choice of law.  If either test is met, the court
5  must next determine whether the chosen state's law is contrary to the
6  fundamental public policy of the California.  If there is no conflict, the court shall
7  enforce the parties' choice of law.  If, however, there is a fundamental conflict
8  with California law, the court must then determine whether California has a
9  materially greater interest than the chosen state in determination of the particular
10  issue.  Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.4th 459, 466.

11    Applying the first prong of the choice-of-law test, it is clear that Texas has
12  a substantial relationship to the parties because it plaintiff 16062 SOUTHWEST
13  FREEWAY is a Texas limited liability company.  Id., at 467.  Similarly, the second
14  prong is answered in the affirmative: "A party's place of incorporation in a chosen
15  state meets the reasonable basis test for determining whether a choice-of-law
16  provision is valid.  Restatement (Second) of Conflict of Laws §187(2).  These
17  affirmative answers do not, however, end the inquiry.

18  A.    Texas law is contrary to the fundamental public policy of the State
19        of California.

20    Defendant argues that its use of the 365/360 method of interest calculation
21  is lawful under Texas law so long as it does not violate usury laws.  See, e.g.,
22  Lawler v. Lomas & Nettleton Mortgage Investors, 691 S.W.2d 593 (Tex. 1985);
23  Rent America, Inc. v. Amarillo National Bank, 785 S.W.2d 190 (Tex. App. 1990).
24  As discussed, California law is directly to the contrary.  See, eg., Chern v. Bank
25  of America (1976) 15 Cal.3d 866, 876.  Defendant further contends that plaintiffs
26  cannot pursue a claim for unjust enrichment under Texas law.  Burlington
27  Northern Railroad Co. v. Southwestern Electric Power Co., 925 S.W.2d 92, 97
28  (Tex.App.1996).

1    There are two separate public policies of the State of California at issue: (1)

2  the right of California citizens  to pursue a class action remedy; and (2) the right

3  of California to ensure that its citizens have a viable forum in which to recover for

4  violations of the Unfair Competition Law which broadly prohibits "any unlawful,

5  unfair or fraudulent business act or practice" and includes an expansive remedial

6  scheme.[4/]   The California Supreme Court has made abundantly clear that each

7  public policy is *fundamental* to the state.  <u>Vasquez v. Superior Court</u> (1971) 4

8  Cal.3d 800; <u>Linder v. Thrifty Oil Co.</u>  (2000) 23 Cal.4th 429, 445.  In <u>Vasquez</u>, the

9  Court explained:

10          *Protection of unwary consumers from being duped by*

11          *unscrupulous sellers is an exigency of the utmost*

12          *priority in contemporary society.'  ...  '*Frequently

13          numerous consumers are exposed to the same

14          dubious practice by the same seller so that proof of the

15          prevalence of the practice as to one consumer would

16          provide proof for all.  Individual actions by each of the

17          defrauded consumers [are] often impracticable because

18          the amount of individual recovery would be insufficient

19          to justify bringing a separate action; thus an

20          unscrupulous seller retains the benefits of its wrongful

21          conduct. *A class action by consumers produces*

22          *several salutary by-products, including a therapeutic*

23          *effect upon those sellers who indulge in fraudulent*

24          *practices, aid to legitimate business enterprises by*

25          *curtailing illegitimate competition, and avoidance to the*

26

27  [4/]The UCL includes a private right to sue as a class action (<u>Reese v. Wal-Mart
   Stores, Inc</u>.  (1999) 73 Cal.App.4th 1225); recovery of restitution and injunctive
28  relief (<u>Schnall v. Hertz Corp.</u> (2000) 78 Cal.App.4th 1144); plus enhanced
   remedies for senior and disabled persons (<u>Bus. & Prof.C.§17206.1</u>).

1            *judicial process of the burden of multiple litigation*

2            *involving identical claims.* The benefit to the parties and

3            the courts would, in many circumstances, be

4            substantial. (Emphasis added).

5  *Id*, at 808.

6  In <u>Discover Bank v. Superior Court</u> (2005) 36 Cal.4th 148, the California

7  Supreme Court again addressed choice-of-law questions in the class action

8  context. Citing <u>Vasquez</u>, it reaffirmed the fundamental importance of the class

9  action device to vindicate the rights of large groups of consumers. (<u>*Id*</u>., at 156).

10  It further stressed, that "agreements designating a foreign law will not be given

11  effect if it would violate a strong California public policy or result in the evasion

12  of a statute of the forum protecting its citizens." (<u>*Id*</u>., at 158). The application of

13  Texas law in this case will result in an evasion of California's UCL, which  statute

14  provides fundamental rights and enormous protection to the citizens of this state.

15      B.    <u>California has a materially greater interest than Texas in the</u>

16            <u>determination of the issue.</u>

17  The next step in the <u>Nedlloyd</u> test is to determine which state has a

18  materially greater interest in the litigation. <u>Oestreicher v. Alienwareware Corp.</u>,

19  502 F.Supp.2d 1061 (N.D.Cal. 2007), involved a putative class action lawsuit

20  filed against Alienware, a seller of computer notebooks. Alienware's sale

21  agreements included a waiver of the right to pursue class action. They also

22  included a choice of law agreement mandating that disputes will be governed by

23  the laws of the state of Florida, without regard to conflicts of law principles.

24  Alienware was incorporated in Florida and the Court determined that both the

25  place of contracting and the place of performance were in Florida. However, the

26  plaintiff was a California resident and his causes of action included one for

27  violations of California's Unfair Competition Law.

28  ///

1    The court analyzed the initial prongs of the <u>Nedlloyd</u> test and determined
2    that Florida had a substantial relationship to the parties and that a reasonable
3    basis existed for the choice of law.  However, it determined that California law
4    would govern the action because Florida law was contrary to fundamental public
5    policy of the state of California and California had a materially greater interest in
6    the litigation.  With respect to latter point, the court determined that California had
7    a materially greater interest in the class litigation because: (1) the putative class
8    was limited to California residents [this "certainly increased California's interest
9    in the litigation"]; and (2) the California residents were invoking California
10   consumer protection laws, including the Unfair Competition Law.

11   In this case, as in <u>Oestreicher</u>, the putative class is limited to consumers
12   of the state of California who are proceeding under the Unfair Competition Law.
13   California clearly has a materially greater interest in the litigation than Texas
14   because of its desire to protect its own citizens against unfair and unlawful
15   business practices.  Its affirmation of the class action device only bolsters this
16   conclusion See also, <u>Aral v. Earthlink, Inc.</u>, (2005) 134 Cal.App.4th 544, 564
17   where the court held that a class action lawsuit involving California residents
18   under the UCL implicated a fundamental public policy.   Accordingly, California
19   law must govern the case.

20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

IV
**CONCLUSION**

Based on the foregoing points and authorities plaintiffs respectfully request this Court to deny defendant's Motion to Dismiss as to all claims for relief.

Dated: December 20, 2007          Law Offices of

LEVINE, STEINBERG, MILLER & HUVER

By:_____
                    Harris I. Steinberg
                    Craig A. Miller
                    Counsel for Plaintiffs