1  Harris I. Steinberg (State Bar No. 89288)
   Craig A. Miller (State Bar No. 116030)
2  LEVINE, STEINBERG, MILLER & HUVER
   550 West C Street, Suite 1810
3  San Diego, California 92101-8596
   (619) 231-9449
4
   Attorneys for Plaintiffs
5

6

7                UNITED STATES DISTRICT COURT

8                SOUTHERN DISTRICT OF CALIFORNIA

9
   16062 SOUTHWEST FREEWAY, LLC )   CASE NO.  07 CV 1998 DMS (AJB)
10 and GARY L. GREENBERG, on Behalf )
   of All Others Similarly Situated, and on )  PLAINTIFFS' MEMORANDUM OF
11 Behalf of the Class,              )   POINTS AND AUTHORITIES IN
                                     )   OPPOSITION TO MOTION TO
12              Plaintiffs,          )   DISMISS
                                     )
13 v.                                )   Date:      January 11, 2008
                                     )   Time:      1:30 p.m.
14 PRINCIPAL COMMERCIAL FUNDING, )    Judge:     Dana M. Sabraw
   LLC., and DOES 1 through 10, )        Courtroom: 10
15 inclusive,                        )
                                     )
16              Defendants.          )
                                     )
17

18       Plaintiffs, 16062 SOUTHWEST FREEWAY, LLC and GARY L. GREENBERG,

19 respectfully submit the following Memorandum of Points and Authorities in

20 Opposition to PRINCIPAL COMMERCIAL FUNDING's Motion to Dismiss.

21                              I
                          INTRODUCTION
22

23       Defendant's motion to dismiss depends for its success on a substantial

24 distortion of the allegations in the complaint. Plaintiffs do not, as defendant

25 repeatedly asserts, contend that defendant failed to disclose its *method* of

26 calculating interest.  A simple review of the complaint establishes this point.

27 Thus, the argument that the complaint must be dismissed because defendant

28 actually disclosed to plaintiffs the *method* by which it calculated interest is a

cipher, advanced only to distract this court from the actual issue raised by this lawsuit.[1]

The actual issue raised by plaintiffs in their complaint is straightforward. The defendant does not disclose the *correct* interest rate to its borrowers. Instead, defendant uses a disclosed method of interest calculation that charges interest over the course of a calendar year that is higher than the "per annum" rates directly quoted to its borrowers in their loan documents. For example, in this case, defendant specifically informed plaintiffs that they would be paying interest on the unpaid balance of the loan "at a rate of Six percent (6.00% per annum," but actually calculated the rate over a 360-day year. This resulted in an undeserved windfall to defendant in the form of higher than quoted interest rate as well as a longer amortization period. (Cpt.,¶¶ 9& 10). California courts consider this practice to be misleading and unlawful under the Unfair Competition Law ("UCL"). *See*, Chern v. Bank of America (1976) 15 Cal.3d 866, 876. [The practice of quoting as a 'per annum' rate interest that is actually computed on the basis of a 360-day year is likely to mislead and deceive a bank's potential borrowers and constitutes false and misleading advertising].

In an effort to evade liability to at least hundreds of Californian citizens under California's Unfair Competition Law, defendant further claims that plaintiffs' claims are governed by Texas law. In fact, however, the state of California has a fundamental policy to ensure that its citizens have the right to pursue class action remedies under its Unfair Competition Law and has a materially greater interest than Texas in the determination of the issues raised in the complaint. *See, e.g.*, Oestreicher v. Alienware Corp., 502 F.Supp.2d 1061 (N.D.Cal. 2007)

---

[1] The same holds true for defendant's repeated accusations that plaintiffs deceived the court by not affixing the loan documents to their complaint "in a transparent attempt to hide the obvious and indisputable disclosures regarding the interest rate calculation." The loan documents *support* plaintiffs' position.

1  Accordingly, California law governs this dispute.

## II
## PLAINTIFFS' COMPLAINT PLEADS CLAIMS FOR RELIEF UNDER THE UNFAIR COMPETITION LAW

Plaintiffs' complaint pleads claims for relief under section 17200 of the California Business and Professions Code (UCL) and an equitable claim for Unjust Enrichment. Each claim is predicated on the allegations that defendant quotes a precise "per annum" interest rate to its borrowers in its loan documents while actually computing interest in such a way as to yield a higher rate of interest than that already quoted.

Paragraph 9 describes defendant's misleading business practices in the following way:

> Defendant PCF is in the business of originating, securitizing and servicing commercial real estate loans. PCF has committed acts of unfair competition, as defined by Business and Professions Code section 17200, et seq., by (1) utilizing a method of interest calculation that systematically and deliberately charges its borrowers interest over the course of a calendar year in excess of stated annual and per annum rates; and (2) misleading its borrowers by representing that its loans would fully amortize over a set period of years when, in fact, a substantial balance would still be owed after the amortized period which defendants did not disclose. More particularly, PCF computes yearly interest rates by dividing the quoted annual interest rate by 360 and multiplying the result by 365. This practice, which is known as the "365/360 method" results in an effective interest rate that exceeds the stated per annum or annual interest rate and an amortization period that is longer than that represented by the defendant. Defendants had no reason for computing yearly interest rates by the "365/360 method" other than to maximize their profits and deceive borrowers.

Paragraph 10 alleges how defendant's misleading business practices actually harmed plaintiffs in this case:

> Plaintiffs are victims of PCF's unscrupulous business practices. On or about March 7, 2007, 16062 SOUTHWEST FREEWAY borrowed $2,7000.00 from PCF in connection with the refinance of a medical office building located at 16062 Southwest Freeway, Sugar

Land, Texas. As a condition to PCF's agreement to make the loan, on or about March 7, 2007, PCF required GREENBERG to guarantee payment and the full, faithful and timely performance of any and all liabilities and obligations of the borrower. The loan was for a 10 year term, amortized over 30 years, at a 6% annual interest rate. The secured promissory note executed by 16062 SOUTHWEST FREEWAY and guaranteed by GREENBERG also quotes an interest rate of 6% per annum. Contrary to these representations, and based on defendant's misleading practice of actually computing the interest rate on the basis of a 360 day year, defendant has charged and continues to charge an interest rate exceeding 6% per annum and, at the end of 30 years, plaintiffs' loan would not be fully amortized. Rather, plaintiffs would still owe PCF approximately $142,000.00, and the effective interest rate would be in excess of the agreed 6% interest rate.

In its motion, defendant has attached as an exhibit the Secured Promissory Note signed by 16062 SOUTHWEST FREEWAY and guaranteed by GARY GREENBERG to its Motion to Dismiss. (*See,* Defendant's Lodgment of Exhibits, Exh. 1). The language set forth in the Promissory Note absolutely coincides with and verifies the allegations set forth in plaintiffs' complaint. More particularly, the Promissory Note (1) expressly states that plaintiffs promised to repay the loan at a precise rate of interest ["[A]t a rate of Six percent (6.00%) per annum"]; and (2) includes the discrepant language that defendant will calculate the interest using the 365/360 method.

### III
### DEFENDANT'S USE OF THE 365/360 METHOD VIOLATES CALIFORNIA'S UNFAIR COMPETITION LAW

In Chern v. Bank of America (1976) 15 Cal.3d 866, a plaintiff brought a class action lawsuit alleging that the bank breached its loan contract with her and all other class members and engaged in unfair business practices by charging a higher annual interest rate than the nine percent specified in the promissory note. As in this case, the bank achieved a higher rate of interest by computing the interest using the 365/360 method. The plaintiff pointed out the discrepancy to the bank and, in response, the bank briefly explained to her its method of

- 4 - P&A Opposition to Motion to Dismiss

1  computing interest. The plaintiff challenged the method as being dishonest, but
2  nonetheless executed the loan documents.

3  *Despite the fact that the plaintiff had antecedent knowledge of the bank's*
4  *use of the 365/360 method before she executed the loan documents*, the
5  California Supreme Court held that the bank's practice of computing interest
6  quoted as a 'per annum' rate on the basis of a 360-day year was likely to
7  deceive the public because 'per annum' literally means 'by the year' and, as
8  commonly understood, a year has either 365 or 366 days.

> In absence of evidence to the contrary, we must assume that the public is likely to understand that a 'per annum' rate is an annual rate based on a 365-day calendar year. The fact that it may be customary business practice within the banking community to quote interest rates on the basis of a 360-day year does not necessarily establish that the practice is not misleading the general public with whom defendant deals.

Id., at 876.[2]

Although the decision emanates from the California Supreme Court, defendant has neither analyzed nor discussed Chern in its motion. Rather, it has chosen to bury in footnote 5 of its brief the sweeping, wholly inaccurate, statement that, under South Bay Chevrolet v. General Motors Acceptance Corporation, 72 Cal.App.4th 861, 869 (1999), "[T]he interest calculation provided for in the Promissory Note is lawful under California law." South Bay Chevrolet makes no such holding.

---

[2] *See also*, Fletcher v. Security Pacific National Bank, (1979) 23 Cal.3d 442. (Unfair trade practice established on part of defendant bank by computing so-called "per annum" rates on basis of 360-day year.

- 5 - P&A Opposition to Motion to Dismiss

1  In South Bay Chevrolet an automobile dealership obtained short-term loans (fewer than 90 days on average) from the defendant to fund purchases of vehicles for resale. The loans were not evidenced by a promissory note identifying a precise 'per annum' interest rate to be charged to the borrower, but rather by a Wholesale Security Agreement which did not contain specific loan terms such as the amount of credit to be extended, the rate of interest, the method of interest calculation, repayment provisions or the beginning or ending dates of the refinancing. The plaintiff and its finance department were, at all times, aware that defendant actually calculated interest on the 365/360 method on a floating basis using the prime rate. The parties also had a decades long course of dealing and repeatedly communicated with each other regarding the financing. Under these facts, the appellate court determined that the plaintiff's sophistication and knowledge precluded an UCL claim against the defendant.

This case clearly alleges a factual circumstance distinct from that presented in South Bay Chevrolet. Specifically, in this case, the plaintiff executed a long-term Promissory Note containing specific loan terms, including the precise "per annum" interest rate to be charged. ["[A]t a rate of Six percent (6.00%) per annum"]. Notwithstanding this representation, defendant calculated the interest to reflect a higher rate, the actual amount of which was never disclosed to plaintiff. It would have been a simple matter for defendant to raise its interest rate to generate the additional income the 365/360 method produced and to accurately quote that higher rate in the loan documents. It chose not to. No logic, course of dealing or conceptual justification exists for defendant's surreptitious conduct. Clearly, defendant's goal was to lead the plaintiffs into believing they would be paying interest at a rate of 6%, when they were not.

///
///
///

# III
## TEXAS LAW CLASHES WITH THE FUNDAMENTAL PUBLIC POLICIES OF THIS STATE AND ITS APPLICATION WILL UNFAIRLY PERMIT DEFENDANT TO EVADE THE PROTECTIONS AFFORDED BY THE UCL

Plaintiff GREENBERG is a California resident who, in this action, seeks to represent "at least hundreds" of California consumers. (Cpt.,¶¶2b, 11 & 12). GREENBERG personally guaranteed the subject loan in California. (Cpt.,¶2d). Although incorporated in Texas, plaintiff 16062 SOUTHWEST FREEWAY maintains its principal place of business in San Diego County, California. (Cpt. ¶2a). It obtained the loan which serves as the subject matter of this lawsuit in San Diego County, California.(Cpt.¶2c). The defendant has no particular allegiance to the State of Texas: it is a Delaware corporation with its principal place of business in Des Moines, Iowa. (Cpt.¶5, Defendant's Lodgement, Exh. 1).

Notwithstanding these facts, and without extended discussion or analysis, defendant summarily concludes that Texas law governs this case because the loan documents state that the parties' agreements shall be governed "by the laws of the state where the Premises is located, without regard to conflict of law principles" Id[3]. If defendant is correct, at least hundreds of citizens of the State of California who have been harmed by defendant's misleading business practices will be left without a remedy merely because the plaintiff's land happens to be in Texas. Clearly, the mere fortuity of "where the premises is located," should not, in this case, permit defendant to engage in misleading business practices in the State of California with impunity and without regard to appropriate consequence.

///

---

[3]The party advocating a contractual choice of law clause bears the burden of showing that the claim falls within the choice of law provision. Washington Mut. Bank, FA v. Superior Court (2001) 24 Cal.4th 906, 912. In its brief, defendant utterly fails to discuss the issue.

- 7 - P&A Opposition to Motion to Dismiss

In determining the enforceability of a contractual choice-of-law provision, the court must first determine (1) whether the chosen state has a substantial relationship to the parties or their transaction; or (2) whether there is any other reasonable basis for the parties' choice of law. If either test is met, the court must next determine whether the chosen state's law is contrary to the fundamental public policy of the California. If there is no conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in determination of the particular issue. Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.4th 459, 466.

Applying the first prong of the choice-of-law test, it is clear that Texas has a substantial relationship to the parties because it plaintiff 16062 SOUTHWEST FREEWAY is a Texas limited liability company. Id., at 467. Similarly, the second prong is answered in the affirmative: "A party's place of incorporation in a chosen state meets the reasonable basis test for determining whether a choice-of-law provision is valid. Restatement (Second) of Conflict of Laws §187(2). These affirmative answers do not, however, end the inquiry.

### A. Texas law is contrary to the fundamental public policy of the State of California.

Defendant argues that its use of the 365/360 method of interest calculation is lawful under Texas law so long as it does not violate usury laws. See, e.g., Lawler v. Lomas & Nettleton Mortgage Investors, 691 S.W.2d 593 (Tex. 1985); Rent America, Inc. v. Amarillo National Bank, 785 S.W.2d 190 (Tex. App. 1990). As discussed, California law is directly to the contrary. *See, eg.,* Chern v. Bank of America (1976) 15 Cal.3d 866, 876. Defendant further contends that plaintiffs cannot pursue a claim for unjust enrichment under Texas law. Burlington Northern Railroad Co. v. Southwestern Electric Power Co., 925 S.W.2d 92, 97 (Tex.App.1996).

There are two separate public policies of the State of California at issue: (1) the right of California citizens to pursue a class action remedy; and (2) the right of California to ensure that its citizens have a viable forum in which to recover for violations of the Unfair Competition Law which broadly prohibits "any unlawful, unfair or fraudulent business act or practice" and includes an expansive remedial scheme.[4] The California Supreme Court has made abundantly clear that each public policy is *fundamental* to the state. <u>Vasquez v. Superior Court</u> (1971) 4 Cal.3d 800; <u>Linder v. Thrifty Oil Co.</u> (2000) 23 Cal.4th 429, 445. In <u>Vasquez</u>, the Court explained:

> *Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society.'* ... 'Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers [are] often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. *A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the*

---

[4] The UCL includes a private right to sue as a class action (<u>Reese v. Wal-Mart Stores, Inc</u>. (1999) 73 Cal.App.4th 1225); recovery of restitution and injunctive relief (<u>Schnall v. Hertz Corp</u>. (2000) 78 Cal.App.4th 1144); plus enhanced remedies for senior and disabled persons (Bus. & Prof.C.§17206.1).

>   *judicial process of the burden of multiple litigation
>   involving identical claims.* The benefit to the parties and
>   the courts would, in many circumstances, be
>   substantial.  (Emphasis added).

*Id*, at 808.

In <u>Discover Bank v. Superior Court</u> (2005) 36 Cal.4th 148, the California Supreme Court again addressed choice-of-law questions in the class action context.  Citing <u>Vasquez</u>, it reaffirmed the fundamental importance of the class action device to vindicate the rights of large groups of consumers.  (*Id*., at 156). It further stressed, that "agreements designating a foreign law will not be given effect if it would violate a strong California public policy or result in the evasion of a statute of the forum protecting its citizens." (*Id*., at 158).  The application of Texas law in this case will result in an evasion of California's UCL, which statute provides fundamental rights and enormous protection to the citizens of this state.

>    B.    <u>California has a materially greater interest than Texas in the determination of the issue.</u>

The next step in the <u>Nedlloyd</u> test is to determine which state has a materially greater interest in the litigation. <u>Oestreicher v. Alienwareware Corp.</u>, 502 F.Supp.2d 1061 (N.D.Cal. 2007), involved a putative class action lawsuit filed against Alienware, a seller of computer notebooks.  Alienware's sale agreements included a waiver of the right to pursue class action.  They also included a choice of law agreement mandating that disputes will be governed by the laws of the state of Florida, without regard to conflicts of law principles. Alienware was incorporated in Florida and the Court determined that both the place of contracting and the place of performance were in Florida. However, the plaintiff was a California resident and his causes of action included one for violations of California's Unfair Competition Law.

*///*

1       The court analyzed the initial prongs of the <u>Nedlloyd</u> test and determined that Florida had a substantial relationship to the parties and that a reasonable basis existed for the choice of law. However, it determined that California law would govern the action because Florida law was contrary to fundamental public policy of the state of California and California had a materially greater interest in the litigation. With respect to latter point, the court determined that California had a materially greater interest in the class litigation because: (1) the putative class was limited to California residents (this "certainly increased California's interest in the litigation"); and (2) the California residents were invoking California consumer protection laws, including the Unfair Competition Law.

      In this case, as in <u>Oestreicher</u>, the putative class is limited to consumers of the state of California who are proceeding under the Unfair Competition Law. California clearly has a materially greater interest in the litigation than Texas because of its desire to protect its own citizens against unfair and unlawful business practices. Its affirmation of the class action device only bolsters this conclusion See also, <u>Aral v. Earthlink, Inc.</u>, (2005) 134 Cal.App.4th 544, 564 where the court held that a class action lawsuit involving California residents under the UCL implicated a fundamental public policy. Accordingly, California law must govern the case.

///
///
///
///
///
///
///
///
///

- 11 - P&A Opposition to Motion to Dismiss

## IV
## CONCLUSION

Based on the foregoing points and authorities plaintiffs respectfully request this Court to deny defendant's Motion to Dismiss as to all claims for relief.

Dated: December 20, 2007        Law Offices of

LEVINE, STEINBERG, MILLER & HUVER

By:_____
    Harris I. Steinberg
    Craig A. Miller
    Counsel for Plaintiffs